

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI, )
                    Respondent, )
                             )    **WD86670**
           v. )    **OPINION FILED:**
                             )    **APRIL 15, 2025**
MARK RANDAL PULLUM, )
                    Appellant. )

**Appeal from the Circuit Court of Callaway County, Missouri**
**The Honorable Joshua C. Devine, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,**
**Cynthia L. Martin, Judge, Gary D. Witt, Judge**

Mark Pullum appeals the judgment of the Callaway County Circuit Court convicting him after jury trial for assault in the first degree and burglary in the first degree. Pullum was sentenced to imprisonment terms of twenty five years in the Missouri Department of Corrections for assault and ten years in the Missouri Department of Corrections for burglary. The sentences were ordered to run concurrently. In his sole point on appeal, Pullum argues the trial court erred in failing to instruct the jury on self-defense for the charge of burglary in the first degree. He argues that, if he committed burglary, he did so as an act of self-defense. The judgment is affirmed.

## Facts[1]

Mark Pullum was charged in the Callaway County Circuit Court in February 2022. The Information stated in relevant part:

> COUNT I
> The defendant … committed the class B felony of burglary in the first degree, … in that on or about January 11, 2021 … the defendant knowingly entered unlawfully in an inhabitable structure … possessed by D.K., for the purpose of committing assault therein, and while in such an inhabitable structure there was present in such inhabitable structure D.K., a person who was not a participant in the crime.
>
> COUNT II
> The defendant … committed the class A felony of assault in the first degree … in that on or about January 11, 2021 … the defendant knowingly caused serious physical injury to D.K. by striking D.K. in the face.

The matter proceeded to jury trial in August 2023. The following relevant evidence was presented at trial:

Pullum approached his neighbor D.K., who was about 70 years old, to ask if D.K. knew anything about Pullum's missing dog. D.K. lived in a small camper on the property of a purported drug dealer. Pullum and his girlfriend believed the drug dealer or drug dealer's girlfriend might be responsible for the dog's disappearance. Pullum was on good terms with D.K.

---

[1] "[W]e view the evidence in the light most favorable to giving the defendant's self-defense instruction." *State v. O'Keefe*, 681 S.W.3d 615, 627 (Mo. App. E.D. 2023). Pullum states in his brief that the sufficiency of the evidence supporting his convictions is not an issue in this appeal.

Pullum's girlfriend watched from a distance while Pullum went to the camper to speak with D.K. Pullum stayed standing on the ground while he talked to D.K. A set of three stairs led up to a small platform in front of the camper's door.

D.K. testified that he told Pullum he did not know where his dog was. D.K. stated he did not have contact information for the drug dealer or the drug dealer's girlfriend. D.K. testified that this made Pullum angry.

Pullum's girlfriend saw Pullum become frustrated and throw his hands up as though he were frustrated. Pullum began walking away from D.K.'s trailer. Pullum's girlfriend saw D.K. reach for a gun. D.K. kept a rifle next to his camper's door. Pullum's girlfriend yelled, "Mark, he's got a gun." She was scared because D.K. pointed the gun directly at Pullum.

When D.K. spoke with police, he stated that he pointed the gun at Pullum. At trial, D.K. testified that he never removed the gun from its case and threw the gun on his bed when Pullum stated he was not afraid of the gun. D.K. testified that Pullum only came up the stairs and hit him after he showed Pullum the gun.

Pullum turned and saw D.K. pointing the gun at him. Pullum rushed up the stairs and struggled to take the gun away from D.K. Pullum successfully disarmed D.K. and threw the gun away from them.

Pullum punched D.K. twice in the face and tried to kick him. D.K. stated that Pullum's fist came inside his camper to hit him but that Pullum did not step inside the

3

camper. One of the punches injured D.K.'s eye, causing D.K. to become blind in that eye. The entire physical conflict lasted approximately 15 seconds.

The jury was given the following relevant jury instructions:

Instruction No. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that … the defendant knowingly entered unlawfully [D.K.'s camper] …

Second, that the defendant did so for the purpose of committing the offense of assault in the fourth degree therein, and

Third, [D.K. was present in the structure], and

Fourth, that defendant did not act in lawful defense of another person as submitted in Instruction No. 9,

then, you will find the defendant guilty under Count I of burglary in the first degree.

As used in this instruction, the term "assault in the fourth degree" means attempting to cause physical pain to another person. ….

Instruction No. 7

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that … the defendant knowingly caused serious physical injury to [D.K.] by striking him, and

Second, that defendant did not act in lawful self-defense as submitted in Instruction No. 8,

Third, that defendant did not act in lawful self-defense of another person as submitted in Instruction No. 9,

then you will find the defendant guilty under Count II of assault in the first degree. …

Instruction No. 8

One of the issues in this case is whether the use of physical force by the defendant against [D.K] was lawful. On the issue of self-defense in this case, you are instructed as follows:

In this state the use of physical force to defend oneself is lawful in certain situations.

…

4

A person is not justified in using physical force to defend himself if he was committing Burglary in the 1st Degree.

…

Instruction No. 9

One of the issues in this case is whether the use of physical force by the defendant against [D.K.] was lawful. On the issue of defense of another person in this case, you are instructed as follows:

In this state the use of physical force to defend another person is lawful in certain situations.

…

During the jury instruction conference, the following occurred:

THE COURT: And is there any objection from the defense as to Instruction No. 5?

DEFENSE COUNSEL: Well, this is the one that, you know, the line that came out about whether or not the defendant was acting in lawful self-defense. So this is one part of it because of the way this reads. So I only object to that to the extent that it doesn't include the line that the defendant did not act in lawful self-defense, which has been omitted now based on our conference.

THE COURT: I thought we agreed that if you wanted that in that we would put that in.

DEFENSE COUNSEL: No. We do have defense of the other – of another person, but because of the line of self-defense is not a defense to burglary first, then that line came out of this instruction as to burglary first.

PROSECUTOR: I believe that we agreed that because the self-defense instruction pursuant to note 6 eliminates the right to use self-defense in the event the defendant was committing a forcible felony, i.e. burglary, that that paragraph then has to come out of the verdict director for burglary.
…
So you're referring to really the argument for Instruction No. 8, the self-defense instruction, Judge?

THE COURT: Yes. What was the State's argument on that?

5

PROSECUTOR: The State's argument was that pursuant to the Note on Use No. 6, that eliminates the right to assert self-defense in the event that the defendant was committing or attempting to commit a forcible felony, and because that same note, specifically referring to the underlying statute defines burglary as a forcible felony, the State's argument was that, therefore, the line should be added to the self-defense instruction that is offered in that MAI, a person is not justified in using physical force to defend himself if he was committing burglary in the first degree.

THE COURT: All right. And ultimately the Court has indicated that it is in agreement with the State's argument. But [Defender Counsel], I want you to put on the record what the defense position was, which we discussed off the record.

DEFENSE COUNSEL: Thank you, Your Honor. The defense position is that given that self-defense is a defense to assault, and assault is an element of burglary first, you must be able to defend yourself by self-defense in a burglary first in a situation that we have here, where the information that came from the evidence today suggested things started on the outside, even if, you know, everything is believed by the State, then they flowed to the inside. So the burglary is not the first thing. The assault and whether or not he had a right to self-defense is a first thing. And on this occasion, I believe that this sentence is not appropriate for self-defense.

THE COURT: All right. And the defense argument I think really is a challenge to whether the State can meet its burden of proof beyond a reasonable doubt as to submission of the charge of burglary in the first degree. There have been two witnesses that have testified in a contrary nature, and that's essentially the crux of the case. One whether -- who was in the right here or who was in the wrong, and where ultimately that action occurred. There was one witness who testified it was on the cusp of the entry into his home, and that certainly hands and feet made it into the home. And that would suggest that the defendant was the aggressor if, in fact, the jury were to believe that testimony. [Defense Counsel], you were referring to testimony from the final witness, [Pullum's girlfriend] who indicated that all of the action occurred outside of the entryway of the home. And that if the jury believes that, then the defendant couldn't have been guilty of burglary in the first degree. And ultimately, I'm going to submit that issue that's a factual question as to who the witnesses are that the jury believes, or how much of the testimony that the jury believes. But the State's point was that if the jury believes that the defendant was committing the felony

6

of burglary in the first degree, then under the law and not only the Note on Use but the statute that is referred to in the Note on Use, then the defendant is not entitled to the self-defense -- is not entitled to the defense of self-defense if he, in fact, was committing burglary in the first degree, which, again, is going to be an issue for the jury. So I understand the defense's argument. That is going to be overruled. I think that argument really goes to not whether it should be included in the instruction, but really, rather, whether the State has met its burden, which ultimately the jury is going to have to decide on Instruction No. 5. So we have gotten out of order. We will come back to Instruction No. 5. And you were indicating, [Defense Counsel], that, essentially picking up on the argument you were just making, you wanted to see some additional language in Instruction No. 5. Is that right?

DEFENSE COUNSEL: Again, referring to Instruction No. 8 and the argument that we've made on that, if the Court ruled with me, then there would have to be additional information in Instruction No. 5 as to the point of whether the person had the right to self-defense.

THE COURT: So there is a tail that could be added to Instruction No. 5. Is that right, [Prosecutor]?

PROSECUTOR: There is.

THE COURT: Or I guess it's not really a tail --

PROSECUTOR: A tag.

THE COURT: A tag. Okay. It's additional language and that would be referring to the self-defense instruction?

PROSECUTOR: Yes, Judge.

THE COURT: And [Defense Counsel], you're asking for the Court to give that additional tag?

DEFENSE COUNSEL: Correct.

THE COURT: And the State's position is that under the law of the State of Missouri, self-defense cannot be in play if the defendant was, in fact, committing burglary in the first degree?

7

PROSECUTOR:  That's exactly right, Judge.

THE COURT:  All right.  And the Court is in agreement with the State as to what the current law is in the State of Missouri.

…

Instruction No. 8 is the one we've already discussed, which is self-defense. And I've heard the arguments that have been made by both parties on this.

….

So I'm going to show submitted by Defendant and State.  And I don't want there to be any suggestion for purposes of preservation.  [Defense Counsel] has clearly stated his objection, and it's very clear as to what language the State has added in.  And that's what I'm going with is the State's language regarding the -- I guess the language is, quote, A person is not justified in using physical force to defend himself if he was committing burglary in the first degree, period, closed quote.  That is the State's language; right?

PROSECUTOR:  It is.

THE COURT:  All right. And we've gone over that at length.

The jury found Pullum guilty of both counts.  It recommended incarceration sentences of 25 years for assault and 10 years for burglary.  The court sentenced Pullum accordingly, with the sentences to be served concurrently.

This appeal follows.

**Standard of Review**

Pullum states his claim is preserved because he objected to the jury instructions at trial and included the issue in his motion for a new trial.  The State, citing Rule 28.02(b),[2]

---

[2] Rule 28.02(b) states in relevant part that "[i]nstructions and verdict forms that a party requests shall be submitted in writing."

8

argues that the claim is not preserved because Pullum did not submit an alternative written jury instruction to the court.

The dirty jury instructions[3] in the legal file indicate that Pullum submitted Instructions No. 5 and No. 9 and that Pullum and the State both submitted Instructions No. 7 and 8. However, the transcript records the court as stating that "Instruction 5 is submitted by the State." The transcript also reflects that both parties worked on Instruction No. 8. The dirty copy in the legal file states in typed words that it is "submitted by defendant" and then the court handwrote "and State." The transcript also indicates that many of the logistics of the jury instructions occurred off the record and then the parties went on the record to describe what had been worked out. It appears as though each party may have submitted their own written instructions and then only the agreed upon instructions made it into the legal record. The parties discussed adding and removing lines from the instructions.

The trial court, however, went to great effort to make sure Defense Counsel's argument was preserved for appellate review. The trial court stated:

> And I don't want there to be any suggestion for purposes of preservation. [Defense Counsel] has clearly stated his objection, and it's very clear as to what language the State has added in. And that's what I'm going with is the State's language regarding the -- I guess the language is, quote, A

---

[3] There are two sets of instructions in Defendant's legal file: a "dirty" set and a "clean" set. Typically the dirty set is the working copy, and the clean set is the one sent with the jury when they retire to deliberate. The clean set should be identical to the dirty set, except that references to the instruction's source and submitting party are removed.

*State v. Wolford*, 590 S.W.3d 324, 329 (Mo. App. E.D. 2019).

person is not justified in using physical force to defend himself if he was committing burglary in the first degree, period, closed quote. That is the State's language; right?

In these circumstances, we find that Pullum preserved his argument to this court.

"This Court reviews *de novo* a trial court's decision whether to give a requested jury instruction." *State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018) (internal quotation marks omitted). "The circuit court must submit a self-defense instruction when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony, and failure to do so is reversible error." *Id.* (internal quotation marks, citation, and emphasis omitted). "In determining whether the circuit court erred in refusing to submit an instruction on self-defense, the evidence is viewed in the light most favorable to the defendant." *Id.* (internal quotation marks omitted).

### Analysis

In his sole point on appeal, Pullum claims that the trial court erred in failing to instruct the jury that his burglary of D.K. could be justified with self-defense. He claims that self-defense justifies the use of physical force and that burglary is an offense involving the use of physical force. Pullum essentially argues that he had to commit burglary to defend himself.[4]

---

[4] This court notes that section 563.026.1, RSMo, sets forth the defense of necessity which would justify otherwise criminal conduct such as burglary. *See, e.g., State v. O'Hara*, 685 S.W.3d 647, 649 (Mo. App. E.D. 2024) (defendant "alleged he broke into the house to save a woman being held inside"). The elements of that defense are that otherwise criminal conduct is justified when: "1) it is necessary as an emergency measure 2) to avoid an imminent public or private injury 3) that is about to occur through no fault of the defendant and 4) it is objectively

10

Section 563.031.1[5] provides in relevant part:

> 1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person, unless:
> (1) The actor was the initial aggressor; except that in such case his or her use of force is nevertheless justifiable provided:
> …
> (2) Under the circumstances as the actor reasonably believes them to be, the person whom he or she seeks to protect would not be justified in using such protective force;
> (3) The actor was attempting to commit, committing, or escaping after the commission of a forcible felony.
> 2. A person shall not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless:
> …
> 3. A person does not have a duty to retreat:
> (1) From a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining;
> (2) From private property that is owned or leased by such individual; or
> (3) If the person is in any other location such person has the right to be.
> …

A person may not use self-defense as a justification for the person's use of force against another if the person "was attempting to commit, committing, or escaping after the

---

reasonable in light of the injury to be avoided." *State v. Hurst*, 663 S.W.3d 470, 474 (Mo. banc 2023). It does not appear that Pullum pursued this defense at trial. We make no finding regarding whether Pullum could have established sufficient evidence supporting this defense.

[5] All statutory citations are to RSMo 2016 as updated through the most recent cumulative supplement unless otherwise indicated.

commission of a forcible felony." § 563.031.1(3). Burglary is a forcible felony.[6] §

563.011(4) (defining forcible felony as "any felony involving the use or threat of physical

force or violence against any individual, including but not limited to murder, robbery,

burglary, arson, kidnapping, assault, and any forcible sexual offense").

MAI-CR 406.06 (4th) is titled Justification: Use of Physical Force in Self-Defense

and states in relevant part:

> One of the issues (as to Count _____) (in this case) is whether the use of physical force by the defendant against [*Identify victim.*] was lawful. On the issue of self-defense (as to Count _____) (in this case), you are instructed as follows:
> In this state the use of physical force (, including the use of deadly force,) to defend oneself is lawful in certain situations. [*Select the appropriate paragraphs. Omit brackets and number.*]
> …
> [*Use the material in [2] only if there is evidence that defendant's use of physical force was in connection with the commission of or escape after the commission of a forcible felony. The forcible felony cannot be the felony for which the defendant is charged and is claiming self-defense. See Notes on Use 6.* …
>
> [2] (And a) (But a) (A) person is not justified in using physical force to defend himself if he was (attempting to commit) (committing) (escaping after the commission of) [*Insert name of forcible felony, which cannot be the felony for which the defendant is charged and is claiming self-defense.*]

(Emphasis in original). The Notes on Use 6 for MAI-CR 406.06 (4th) state:

> Section 563.031.1(3), denies the right to use physical force in self-defense to a person who "was attempting to commit, committing or escaping after the commission of a forcible felony."

---

[6] Pullum's burglary charge included the allegation that he unlawfully entered D.K.'s camper for the purpose of committing assault in the fourth degree. Assault in the fourth degree based on attempting to cause physical pain to another person is a class A misdemeanor. § 565.056.2. Thus, it is not a forcible felony.

For example, if the defendant is charged with assault on a bank guard and claims self-defense to save his life by shooting the guard, and if there is evidence that at the time defendant was robbing the bank, the jury will be instructed by including [2]. The forcible felony referred to in those sections will be the bank robbery. The reference to a forcible felony will be a felony other than the assault or homicide offense for which the defendant is claiming self-defense. If the defendant is charged with assault and there is no evidence that the defendant was committing any other forcible felony at the time of the charged offense, the material in [2] will not be used.

Section 563.011(3), defines "forcible felony" as "any felony involving the use or threat of physical force or violence against any individual, including but not limited to murder, robbery, burglary, arson, kidnapping, assault, and any forcible sexual offense."

The term "forcible felony" is not used in the instruction. Instead, the name of the forcible felony is used. If the felony involved is murder, robbery, burglary, arson or kidnapping, simply insert the appropriate word from the statutory list. If the felony involved is an assault, a forcible sexual offense, or a felony not listed in the statute, use only a felony that by its definitional elements involves the use or threat of force or violence. A definition of the particular forcible felony must be given.

The jury was instructed that Pullum's assault of D.K. could not be justified with self-defense if it also found that Pullum burglarized D.K.'s camper. Pullum concedes in his brief that this was not error.

"[T]he statutory principle in Missouri [is] that self-defense justifies only the use of force and is, therefore, a defense only to prosecution for the use of force." *State v. Oates*, 540 S.W.3d 858, 860 (Mo. banc 2018) (holding that where "prosecution for felony murder is not based on the defendant's use of force but rather the underlying felony of attempting to distribute a controlled substance, self-defense continues, as a matter of law, not to be a defense to felony murder."). "Because self-defense justifies only the use of force, it is an absolute defense only to prosecution for the use of force, not prosecution

13

for other acts not involving the use of force, such as those constituting a non-forcible felony." *Id*. at 861. "Accordingly, the dispositive question is whether [the defendant] was prosecuted for his use of force, which self-defense could justify, or for a different act not involving the use of force, which self-defense could not justify." *Id*. (for example, "[w]hen a defendant's use of force causes the death of a person and the State charges the defendant with conventional murder or manslaughter, the criminal act being prosecuted is the defendant's use of force" and "self-defense is an available justification." (emphasis omitted)).

The burglary in the first degree statute criminalizes unlawful entry. § 569.160.1. The burglary in the first degree statute also requires the presence of a weapon, the threat or cause of physical injury to an uninvolved person, or the presence of an uninvolved person. § 569.160.1(1)-(3).[7] Section 563.011(4) defines a forcible felony as "any felony

---

[7] Section 569.160.1 states:

A person commits the offense of burglary in the first degree if he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing an offense therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, the person or another participant in the offense:

(1) Is armed with explosives or a deadly weapon; or

(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or

(3) There is present in the structure another person who is not a participant in the crime.

14

involving the use or threat of physical force or violence against any individual." It goes on to explicitly state that burglary is such an offense. *Id*.

Pullum argues that burglary is statutorily identified as a forcible felony and thus a prosecution for burglary is a prosecution for the use of force. The State argues that self-defense only justifies the use of physical force upon another person and not the unlawful entry into another's home. We need not address these arguments, however, because we find that the trial court did not err for a different reason.

> The elements of self-defense set out in section 563.031 are that the defendant:
>
> (1) was not the initial aggressor; (2) reasonably believed physical force was necessary to defend himself from what he reasonably believed to be the imminent use of unlawful force by [the victim]; (3) reasonably believed deadly force was necessary to protect himself against any forcible felony by [the victim]; and (4) did not have a duty to retreat.

*State v. Whitaker*, 636 S.W.3d 569, 574 (Mo. banc 2022); *see also Bruner*, 541 S.W.3d at 536–37. At issue in this appeal is the fourth element: the duty to retreat.

> The legislature has repeatedly modified the requirements of the duty to retreat, specifying an increasing list of places where the use of force in self-defense may be "necessary" even when safe retreat is available. *See, e.g., § 563.031, RSMo 2000* (no language stating the actor has no duty to retreat); *§ 563.031.3, RSMo Supp. 2013* (there is no duty to retreat while lawfully on one's private property or in one's vehicle); *§ 563.031, RSMo Supp. 2016* (no duty to retreat from any location the person has a right to be).

*Bruner*, 541 S.W.3d at 536 n.6. The current version of section 563.031.3 was last revised in 2016 and is the applicable version to Pullum's case. It provides:

> A person does not have a duty to retreat:

(1) From a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining;
(2) From private property that is owned or leased by such individual; or
(3) If the person is in any other location such person has the right to be.

In order to find Pullum guilty of burglary, the jury was required to find that Pullum knowingly entered unlawfully or knowingly remained unlawfully in D.K.'s home. Thus, Pullum did not meet any of the exceptions to the duty to retreat set forth in section 563.031.3. Pullum could not submit self-defense to the jury with respect to the burglary charge because he could not establish that he did not have a duty to retreat from D.K.'s home. *Contrast State v. Townsend*, 649 S.W.3d 72, 82 (Mo. App. E.D. 2022) (plain error existed where the State inserted "the false issue that an eviction was occurring the day of the shooting because it [gave] the jury a basis to find that [the defendant] was not lawfully on the property at the time of the confrontation and therefore had a duty to retreat from his confrontation" with the victim).

The point is denied.

### Conclusion

The judgment is affirmed.

_____
Anthony Rex Gabbert, Chief Judge

All concur.

16